IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PATRICIA MARLAINA REID, | ) | CASE NO. 18-01629-JCO-7 |
| | ) | CHAPTER 7 |
| Debtor. | ) | |

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ADVERSARY CASE NO. 18-00038 |
| | ) | |
| PATRICIA MARLAINA REID, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' TRIAL BRIEF

In accordance with this Court's Scheduling Order [Doc. 15] and Amended Scheduling Order [Doc. 23], the United States submits this Trial Brief, as follows:

## BACKGROUND

Patricia Reid approached Farm Services Agency (FSA) in December, 2015, professing a passion for farming and animals and seeking $50,000 to commence her own cattle operation. [Ex. 4, USA_0021, 0025.] Yet, Ms. Reid was not entirely truthful in her application: Ms. Reid made no mention of her boyfriend, Josh Sawyer, on whom she would depend to run the cattle operation. [Ex. 4; Ex. 10, 14:8-16, 15:19-16:1.] As the case history will show, Ms. Reid's reliance on Mr.

1

Sawyer was one of a slew of bad decisions that resulted in her filing bankruptcy in an attempt to discharge her FSA debt.

On March 16, 2016, Ms. Reid executed two promissory notes through which she borrowed a combined $50,000 from FSA to purchase cattle and various farming equipment and inventory to manage her cattle operation. [Exs. 1, 2.] She also executed a security agreement giving FSA a first secured position in all of the cattle, equipment, and inventory (the "collateral"). [Ex. 3.] Ms. Reid agreed that FSA's loans would be paid annually through earnings from the cattle operating. [Ex. 8, USA_0136.] Notably, Ms. Reid also agreed to not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of FSA. [Ex. 3, USA_0011, ¶ 3(b)(6).]

In March, 2016, when Ms. Reid purchased and took ownership of the collateral, she lived with her boyfriend, Josh Sawyer, at the Frye Road property. [Stip. Fact, ¶ 5.] Throughout her brief ownership of the cattle, Ms. Reid relied upon Mr. Sawyer to manage the property and tend the cattle. [Ex. 10, 14:8-16.] Absent the few times Ms. Reid watered the animals, Mr. Sawyer performed all of the work on Ms. Reid's farm. [Ex. 10, 15:19-16:1.]

In October, 2016, Ms. Reid noticed that equipment that she had purchased for her cattle operation gradually went missing. [Stip. Fact, ¶ 6.] Further, a man

2

Case 18-00038    Doc 29    Filed 04/03/19    Entered 04/03/19 17:45:46    Desc Main
Document      Page 2 of 11

named "Rigsby" came to Ms. Reid's property and, while she argued with him in her field, took her cattle away. [Stip. Fact, ¶ 10-11.] Ms. Reid received no money or other value in exchange for the cattle. [Stip. Fact, ¶ 11, Ex. 10, 21:12-13.] Yet, Ms. Reid did not prevent Rigsby from taking her cattle. [Stip. Fact, ¶ 12.] She never called the police, never reported the cattle or equipment as stolen, and never informed FSA that its collateral was gone. [Stip. Fact, ¶¶ 7, 9, 13, 15.] Then, in mid-October, 2016, Mr. Sawyer was arrested and taken to jail for drug crimes and eluding the police. [Stip. Fact, ¶ 16.] Ms. Reid knew that Mr. Sawyer was using drugs during this time. [Ex. 10, 49:21-23.] They argued about it many times, and Ms. Reid is sure that Mr. Sawyer sold the cattle and equipment for reasons related to his drug use. [Stip. Fact, ¶ 24; Ex. 10, 49:4-18.] And if Ms. Reid's story ended there, FSA may not have filed this case.

When Ms. Reid left the Frye Road property toward the end of October or beginning of November, only one piece of equipment remained there: the New Holland tractor. [Stip. Fact, ¶ 17.] Rather than contacting FSA regarding its sole remaining piece of collateral, Ms. Reid listed it for sale of Facebook. [Stip. Fact, ¶¶ 18, 21-22.] And rather than turning the $7,000 or $8,000 that she received from the sale over to FSA to pay toward her loan, Ms. Reid used that money to bail Mr. Sawyer out in January, 2017. [Stip. Fact, ¶¶ 19-20.] A few weeks later, in February, 2017, Mr. Sawyer pled guilty to drug charges and went back to jail. [Ex.

3

10, 46:7-14; 47: 3-11.] Prior to filing her bankruptcy, Ms. Reid never paid a penny toward her FSA loans. [Stip. Fact, ¶ 23.] Ms. Reid never told FSA that its collateral was being sold off for drug money. [Stip. Fact, ¶¶ 9, 15, 22.] She never informed FSA that Rigsby had taken the cattle or where they might be. [Stip. Fact, ¶ 15.] And she never mentioned that she sold the New Holland tractor and used the thousands of dollars of proceeds to bail Mr. Sawyer out for a few weeks. [Stip. Facts, ¶¶ 19-22.]

Today, Ms. Reid presents as a sympathetic and unfortunate debtor, a young mother with a newborn, caught up with a drug-using boyfriend who sold off the collateral for his own wretched purposes. However, the unfortunate debtor must also be an honest one, and Ms. Reid's dealings with FSA fall short: Ms. Reid affirmatively converted FSA assets and misappropriated the proceeds herself and chose to do nothing knowing that Rigsby and Mr. Sawyer were doing the same.

Ms. Reid's actions and deliberate failures to act evidence her willful and malicious injury to FSA's property in the face of her obligations under the security agreement and are sufficient to deny her a discharge of her FSA debts under the Bankruptcy Code.

## LEGAL ANALYSIS

### A. Willful and Malicious Injury – 11 U.S.C. § 523(a)(6)

Bankruptcy Code § 523(a)(6) excepts from discharge a debt for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). The burden of proof in section 523 matters is by a "preponderance of the evidence." *In re Lanier*, 182 B.R. 341, 345 (Bankr. N.D. Ala. 1995) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)). After an extensive review of the seminal case defining the standards applicable to "willful and malicious injury", *Tinker v. Colwell*, 193 U.S. 473 (1904), and its progeny, the 11th Circuit concluded that "willful" means "deliberate or intentional" and malice can be established by a finding of implied or constructive malice. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1262-63 (11th Cir. 1988). Specifically, the 11th Circuit stated that the standard outlined in *United Bank of Southgate v. Nelson*, 35 B.R. 766, 774 (N.D. Ill. 1983), was the proper standard regarding the "malice" requirement. *Id.*

In *United Bank of Southgate*, the court held,

> [I]n the context of a debtor who sells encumbered property prior to bankruptcy, "willful and malicious injury" means a deliberate or intentional act in which the debtor knows his act would harm the creditor's interest and proceeds in the fact of the knowledge. The debtor's knowledge may be inferred from his experience in business, his concealment of the sales, his admission that he had read the security agreement which forbids the sale or that he understood what was meant by the term security agreement and collateral used as security. A merely technical or innocent conversion, or one under mistake, absent aggravated features does not strictly constitute "willful and malicious injury."

5

*United Bank of Southgate*, 35 B.R. at 776-77.

Similarly, the Bankruptcy Court in the Northern District of Alabama has stated the standards thusly:

> To prevail under section 523(a)(6) the Plaintiff must prove, "an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989). "As to the 'malicious' prong…that term as used in section 523 [is defined] as 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Id.* (quoting *In re Latch*, 820 F.2d 1163, 1166 n.4 (11th Cir. 1987) (parenthetical added).

*In re Lanier*, 182 B.R. 341, 345 (Bankr. N.D. Ala. 1995)

Here, Ms. Reid has stipulated to facts sufficient to establish that her actions and inactions caused willful and malicious injury to FSA's property. Foremost, her sale of the New Holland tractor and misappropriation of the sale proceeds to bail Mr. Sawyer out was deliberate, wrongful, and without just cause. Similarly, Ms. Reid knew of Mr. Sawyer's drug use and suspected, as the collateral went missing piece by piece, that he was selling it for drugs. Yet, Ms. Reid did nothing. Ms. Reid stood idly by and watched as her cattle were loaded up and taken away by someone she knew had no rights to them. Ms. Reid's failure to act in these instances was equally as deliberate, wrongful, and without just cause.

Such conduct should remove the entirety of FSA's loans to Ms. Reid from her discharge under 11 U.S.C. § 523(a)(6). It is axiomatic that one should not benefit from their own wrongs, and the Bankruptcy Code requires no less.

## B. Embezzlement – 11 U.S.C. § 523 (a)(4)

A debtor cannot discharge a debt that arises out of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "Under this section, fraud or defalcation are actionable only if the debtor was a fiduciary of the creditor; whereas, embezzlement or larceny are actionable whether or not the debtor was a fiduciary." *Kern v. Taylor*, 551 B.R. 506, 518 (Bankr. M.D. Ala. 2016)(quoting *Ford Motor Credit Co. v. Talcott (In re Talcott)*, 29 B.R. 874, 878 (Bankr. D. Kan. 1983)).

"Bankruptcy courts define embezzlement as the 'fraudulent appropriation of property of another by a person to whom such property has been entrusted or to whose hands it has lawfully come.'" *Kern*, 551 B.R. at 521 (quoting *Matter of Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (quoting *Moore v. United States*, 160 U.S. 268, 269 (1895))); *see also Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir. 1988). A creditor proves embezzlement by showing that (1) "he entrusted property to the debtor," (2) "the debtor appropriated the property for a use other than that for which it was entrusted," and (3) "the circumstances indicate fraud." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996). The creditor must show that the misappropriation was done with fraudulent intent, which "may be inferred from surrounding circumstances and the conduct of the accused." *In re Cunningham*, 482 B.R. 444, 448 (Bankr. N.D. Ala. 2012) (citing

7

*Kaye v. Rose (Matter of Rose)*, 934 F.2d 901, 904 (7th Cir. 1991); *In re Hendry*, 428 B.R. 68, 78 (Bankr. D. Del. 2010), *aff'd sub nom., Hendry v. Hendry*, BR 06-11364 BLS, 2012 WL 1118208 (D. Del. Apr. 3, 2012). Here, Ms. Reid's actions satisfy each element of embezzlement such that her debts to FSA should be excepted from discharge under 11 U.S.C. 523(a)(4).

*1. The Collateral Was Entrusted to Ms. Reid.*

Ms. Reid stipulates that entered into two promissory notes [Exs. 1, 2] and a Security Agreement [Ex. 3] pledging livestock and equipment to secure loans from FSA. [Stip. Facts, ¶¶ 1-3.] Further, Ms. Reid stipulates that she kept the collateral in her possession at the Frye Road property. [Stip. Facts, ¶ 4-5.]

*2. Ms. Reid Appropriated the Collateral.*

The stated purpose for the underlying loans from FSA was for Ms. Reid to purchase the subject cattle and equipment to run a cattle operation. Ms. Reid executed numerous documents wherein she agreed to protect FSA's collateral. Ms. Reid concedes that she never sought consent from FSA to give away or abandon the collateral. Nor did she ever notify FSA that she was doing so. Yet, Ms. Reid admits that she did not prevent Rigsby from taking her cattle. Nor did she prevent Mr. Sawyer from selling the collateral for drugs, even when she was sure he was doing so. Finally, she affirmatively sold the New Holland tractor and used the proceeds to bail Mr. Sawyer out of jail.

8

During any of these occurrences, Ms. Reid could have simply contacted FSA to retrieve the collateral. Instead, Ms. Reid stayed silent, to her boyfriend's benefit and, consequently, to her own. At a minimum, Ms. Reid appropriated the property for a use other than for that which it was entrusted to her and without the consent of FSA.

### 3. *The Circumstances Indicate Fraud*

The facts and circumstances indicate Ms. Reid acted with fraudulent intent. At any time, Ms. Reid could have easily contacted FSA to retrieve the collateral. At any time, Ms. Reid could have reported the property stolen. Instead, she willfully sold the New Holland tractor, and, through her inaction, she allowed Mr. Sawyer and Rigsby to take FSA's collateral. Her actions and inactions intentionally put the collateral out of FSA's reach and caused FSA to be damaged. Ms. Reid knew that FSA held a security interest in the collateral, and she deliberately (1) sold the tractor, (2) watched Rigsby as he took her cattle, and (3) closed her eyes to her boyfriend's actions that harmed FSA.

From the totality of the circumstances surrounding Ms. Reid's actions, her fraudulent intent may be inferred. *Cunningham*, 482 B.R. at 448. Further, once the creditor presents circumstantial evidence of an intent to deceive, a debtor "cannot overcome that inference with an unsupported assertion of honest intent." *Hendry*, 428 B.R. at 78. "Instead, the court should consider whether the [debtor's] actions

9

appear so inconsistent with [her] self-serving statement of intent that the proof leads th[e] court to disbelieve the debtor." *Id*.

Here, FSA is not suggesting that Ms. Reid obtained the loans under fraudulent pretenses. Ms. Reid's sincerity regarding her passion to have a cattle operation of her own is believable. But as her problems mounted, Ms. Reid's poor decision-making compounded: from turning a blind eye to her boyfriend selling off her farm equipment, to not calling the police or FSA on Rigsby, to, finally, selling the New Holland tractor herself and bailing Mr. Sawyer out. At every turn, Ms. Reid chose the wellbeing of herself and every other party over FSA, denying a single penny to FSA toward the $50,000 she borrowed. Now, through her bankruptcy, Ms. Reid asks the Court to deliver to FSA a final denial. There are many honest but unfortunate debtors who deserve such a fresh start, but Ms. Reid is not one of them.

Respectfully submitted this 3rd day of April, 2019.

                                      Respectfully submitted,

                                      RICHARD W. MOORE
                                      UNITED STATES ATTORNEY

                                    By:_____
                                      Keith A. Jones
                                      Assistant United States Attorney
                                      63 South Royal Street, Suite 600
                                      Mobile, Alabama 36602
                                      Telephone: 251-415-7206

## CERTIFICATE OF SERVICE

I certify that on April 3, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following as well as to all other counsel of record:

Judson E. Crump
Attorney for Debtor

and I further certify that on that day a copy of the same was sent via first-class United States mail, sufficient postage pre-paid and properly affixed, and properly addressed to Debtor at her last known address:

Patricia Marlaina Reid
64 Legion Drive
Monroeville, AL 36460

/s/ *Keith A. Jones*
Keith A. Jones
Assistant U.S. Attorney